**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**GEOVANI HERNANDEZ**                                                    **PETITIONER**

**v.**                         **NO. 2:25-cv-00203-DPM-PSH**

**C. HUMPHREY**                                                          **RESPONDENT**

<u>FINDINGS AND RECOMMENDATION</u>

<u>INSTRUCTIONS</u>

The following Recommendation has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2241 ("2241"), petitioner Geovani Hernandez ("Hernandez") challenges the "lawfulness of his sentence calculation." See Docket Entry 16 at CM/ECF 2. Specifically, he challenges whether the Federal Bureau of Prisons ("BOP") can delay the calculation of the First Step Act ("FSA") time credits a prisoner will earn in prerelease custody until "such time after he has already been transferred to prerelease custody." See Docket Entry 1 at CM/ECF 1. It is recommended that this case be dismissed without prejudice, as he failed to fully exhaust his administrative remedies before filing the case.

The record reflects that in 2019, Hernandez was sentenced in United States v. Hernandez, No. 7:17-cr-01352-001 (S.D.Tex), to BOP custody for a total term of 240 months imprisonment. Five years of supervised release was also imposed. He came to be housed at a BOP facility in Arkansas.

Hernandez began this case by filing a petition for writ of habeas corpus. In the petition, he challenged whether the BOP can delay the calculation of the FSA time credits a prisoner will earn in prerelease custody until such time as the prisoner is transferred to prerelease custody. In support of the challenge, he alleged the following:

The Bureau of Prisons has classified Hernandez as being eligible to earn, receive, and apply FIRST STEP ACT time credits (FTC) under the provisions set forth in 18 U.S.C. 3632(d)(4)(A)-(C). As of 6/09/25, the date of his last FSA Time Credit Assessment, Hernandez has been assessed with an FSA Conditional Placement Date (CPD) of 9/14/30. This CPD stands distinct from any prerelease custody placement he may be awarded under the Second Chance Act, and stands in addition to the FSA time credits he has earned toward his term of supervised release or RRC/HC program assignment. Nevertheless, Hernandez' FSA Conditional Placement Days calculation, amounting to 1585 FTCs, is short because it does not reflect the number of FTCs he is projected to earn while in prerelease custodial custody. This miscalculation results in an incorrect CPD of approximately 990 FTCs that are severed from the actual number of time credits he should have been credited, up to his statutory release date of 1/16/2036.

See Docket Entry 1 at CM/ECF 2-3. He clarified in a subsequent pleading that he is not seeking an earlier "transfer, placement, or designation to any specific location" or to prerelease custody, and he is not seeking to have his FSA time credits applied to his sentence. See Docket Entry 16 at CM/ECF 2. He is instead challenging the BOP's "current sentence-calculation methodology." See Id. at 10.

As a part of the petition, Hernandez addressed the exhaustion issue. He represented in one paragraph that he "exhausted the prison's administrative grievance process ..." See Docket Entry 1 at CM/ECF 2. In a paragraph that followed, though, he represented the following:

Hernandez also asks that this court matter be allowed to proceed under the narrow exception to fully exhaust his administrative grievances because it would be futile to do so. The BOP has not disputed the facts asserted by Hernandez as are indicated in his most recent FSA Time Credit Assessment worksheet, and since this issue is a question of a matter-of-law issue, any further delay in exhaustion of grievances that the Bureau has no authority to reconcile would only cause further harm to Hernandez by extending his imprisonment assignment even more than it already has been.

See Docket Entry 1 at CM/ECF 2.

Humphrey responded to the petition and asked that it be dismissed, in part, because Hernandez failed to fully exhaust his administrative remedies. Humphrey supported his assertion with an affidavit from Joshua Sutton ("Sutton"), a BOP official, who represented the following:

> I have reviewed Hernandez's administrative remedy filings. *See Attachment 4, Administrative Remedy Generalized Retrieval*. As of November 17, 2025, [i.e., the day Humphrey filed his response to Hernandez's petition] Hernandez has filed nineteen administrative remedies with the Bureau of Prisons during their period of incarceration. *See id*. Hernandez has never exhausted an administrative remedy related to the recalculation of First Step Act credits. *See id*.
>
> On January 14, 2025, the Warden's Office at FCC Forrest City received BP-9 1225297-F1. *See Attachment 4 at 9*. Hernandez requested that his FSA time credits be recalculated. *See Attachment 5*. On May 19, 2025, the Warden's Office denied Hernandez's BP-9 using one status code "XPL." *See Attachment 4 at 9*. "XPL" means that an explanation of the BOP's course of action was provided.

On May 6, 2025, the South Central Regional Office ("SCRO") received BP-10 1225297-R1. *See Attachment 4 at 10*. Hernandez appealed the determination of the Warden's Office. *See id*. On June 8, 2025, the SCRO denied Hernandez's BP-10, noting that his FSA time credits were being calculated correctly. *See Attachment 5 at 2*.

On August 20, 2025, Hernandez attempted to appeal the denial of his BP-10 by filing a BP-11 1225297-A1 with the Central Office. *See Attachment 4 at 11*. However, this appeal was rejected with the status code "IRQ." *See id*. "IRQ" means that Hernandez failed to provide a copy of his BP-9, which is required in order to perfect a BP-11. *See* 28 CFR 542.15. Hernandez has yet to properly file a BP-11 with Central Office. *See Attachment 4*.

See Docket Entry 7, Exhibit 3 at CM/ECF 3-4.

Hernandez filed a reply in which he acknowledged that he failed to fully exhaust his administrative remedies. He asked that his failure to do so be excused for the following reasons:

... further exhaustion of his administrative grievances is futile because (1) the Bureau has already negatively decided the issue, (2) Hernandez is already routinely receiving sentence computations that sever the credits he will earn while in prerelease custody—rendering moot any benefit he would have received from the application of those credits in accordance with 3632(d)(4)(C), and (3) the lawfulness issue he raises includes an interpretation of law matter that is exclusively the province of judicial review, leaving the BOP without the authority to determine this matter under the law.

See Docket Entry 16 at CM/ECF 10.

"A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under 2241." See Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627, 2 (E.D.Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D.Ark. Dec. 30, 2022). The exhaustion requirement serves several purposes, purposes that include the following:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

See Id., 2002 WL 18027627, 2 (internal quotation and citations omitted.)

The BOP has a four-step administrative process for addressing an inmate's grievance, a process that he must use before moving to federal court. See Id. at 2. The four steps are as follows:

> (1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. 542.13–542.18.

See Id. at 3. "Proper exhaustion of administrative remedies means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." See Id. at 3. (internal quotation marks and citations omitted).

Sutton's unrebutted affidavit establishes that Hernandez began the formal administrative process by filing grievance number 1225297-F1. In the grievance, Hernandez asked that his FSA time credits be recalculated. He completed the required steps until he arrived at step four, which is an appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal form BP-11. Sutton's unrebutted affidavit establishes that Hernandez did not satisfactorily complete that step. Specifically, Hernandez failed to provide a copy of his BP-9, which is required in order to "perfect a BP-11." See Docket Entry 7, Exhibit 3 at CM/ECF 4. He has yet to properly file a BP-11 and thus did not fully exhaust grievance number 1225297-F1 before filing this case. The only question is whether requiring him to do so at this juncture would be futile.[1]

---

[1]    "The two most commonly cited justifications for excusing the exhaustion requirement are futility and urgency ..." See Agor v. Warden, No. 25-cv-3553-NEB-DTS, 2025 WL 3144174, 2 (D. Minn. Oct. 8, 2025), report and recommendation adopted sub nom. Agor v. Eischen, No. 25-cv-3553-NEB, 2025 WL 3142256 (D. Minn. Nov. 10, 2025). In the case at bar, urgency, or the assertion that the "issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution," see Id., is not an issue.

The exhaustion requirement can be excused if the petitioner can show that requiring him to fully exhaust his administrative remedies before seeking habeas relief under 2241 would be futile. See Tensley v. Outlaw, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D.Ark. July 2, 2010). See also Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). That is, the exhaustion requirement can be excused if the administrative process would "serve no useful purpose." See Agor v. Warden, No. 25-cv-3553-NEB-DTS, 2025 WL 3144174 (D.Minn. Oct. 8, 2025), report and recommendation adopted sub nom. Agor v. Eischen, No. 25-cv-3553-NEB, 2025 WL 3142256 (D.Minn. Nov. 10, 2025) (internal quotation marks and citation omitted).

The undersigned is not persuaded that requiring Hernandez to fully exhaust his administrative remedies at this juncture would be futile, serving no useful purpose. The undersigned so finds primarily for two reasons.

First, without the benefit of thorough briefing, the undersigned is not prepared to embrace Hernandez's assertion that the BOP has "already negatively decided the issue [at bar]." See Docket Entry 16 at CM/ECF 10. The BOP may have, but that fact has not been shown here. Assuming, arguendo, that the BOP has already decided the issue, that fact does not make the exhaustion requirement useless, as the process can still serve

8

useful purposes. Moreover, were his assertion alone enough to overcome the exhaustion requirement, "the futility exception would almost certainly swallow the exhaustion rule." See Henderson v. Eischen, No. 23-CV-1336-NEB-ECW), 2023 WL 4422535, 2 (D.Minn. June 7, 2023), report and recommendation adopted, No. 23-CV-1336-NEB, 2023 WL 4421372 (D.Minn. July 10, 2023).

Second, reaching the merits of Hernandez's claim—a challenge to the BOP's sentence calculation methodology—would require an adjudication of his legal argument, which is not a model of clarity. Reaching the merits would also require findings as to his anticipated participation in FSA programming and activities in the future. As to that question, the undersigned adopts the Agor court's concern, which was as follows:

> ... By permitting the BOP to adjudicate his claim administratively, [the petitioner] would ... afford[] that agency an opportunity to clarify its position on these factual issues for the benefit of both [the petitioner] and (if necessary) the Court on habeas review. The likelihood of having to adjudicate factual disputes that could ... [be] resolved—or, if not resolved, clarified for the benefit of the Court—prior to the filing of the habeas petition is one reason why federal courts have consistently required that prisoners raising claims related to FSA credit calculation first exhaust administrative remedies before seeking habeas relief. ...

See Agor v. Warden, 2025 WL 3144174, 2.

The undersigned recognizes that Hernandez's misstep in the administrative process—he failed to perfect a BP-11 by providing a copy of his BP-9—was possibly not a significant misstep. A copy of his BP-9, though, was required in order to perfect a BP-11, and proper exhaustion of his administrative remedies means using all the steps and doing so properly. Accordingly, it is recommended that this case be dismissed without prejudice, all requested relief be denied, and judgment be entered for Humphrey.

DATED this 2nd day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE